CHAMBERS *vs*. THE CINCINNATI AND GEORGIA RAILROAD.

[On account of providential cause, Jackson, Chief Justice, did not preside in this case ]

Private property cannot be taken or damaged for public purposes without just and adequate compensation being first paid. Therefore, when the question of determining the amount of damages which would accrue to a property owner by locating the right of way of a railroad across his land had been submitted to assessors, under the charter of the road, and from their decision the company had entered an appeal, it could not proceed, pending such case, to construct its road across the land; and an effort to do so would be restrained by injunction.

November 28, 1882.

Railroads. Constitutional Law. Damages. Before Judge UNDERWOOD. Floyd County. At Chambers, May 1, 1882.

To the report contained in the decision, it is only necessary to add that Chambers filed his bill to enjoin the Cincinnati and Georgia Railroad Company from proceeding to build its road through his land pending an appeal from the award of assessors fixing the amount of damage to his land by locating the road thereon. The injunction was denied, and complainant excepted.

D. S. PRINTUP; FORSYTH & HOSKINSON, for plaintiff in error.

WRIGHT, WEYERHARDT & WRIGHT, for defendant.

SPEER, Justice.

The plaintiff in error seeks this injunction, which was refused by the court below, to restrain the defendant, its agents and employés, from entering on, using and building its railroad upon a certain right of way over said lands of complainant until just and adequate compensation has been paid therefor, as is provided in article I, section 3, paragraph I of the constitution of this state. The words of this article are as follows:

"Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."

It is conceded by the bill and answer that this is the private property of complainant; that a right of way under authority of its charter has been surveyed and located by the defendant over the lands of complainant, extending through the whole body, and that defendant is proceeding to erect trestle works, and preparing to build and construct its road on said right of way through said lands; that the parties having failed to agree upon the measure of compensation for said right of way, under the provisions of its charter, the defendant, to settle the question of damages when parties cannot agree, gave notice to complainant, and each of the parties selected an assessor, and those two a third; and that the board of assessors thus selected, after examining the right of way and hearing evidence thereon, as to the damages as well as the incidental benefits from the location of said road to complainant's property, awarded that respondent should pay complainant the sum of $2,500.00 for damages for said right of way, and then to occupy and build on said right of way. The respondent refused to accept said award, gave notice thereof and entered an appeal to the superior court from said award.

It is a primary requisite in the appropriation of lands for public purposes that compensation shall be made therefor, and this compensation must be pecuniary in its character, because it is in the nature of a payment for a compulsory purchase. Cooley Cons. Lim., 699. It amounts to nothing more than power to oblige him to sell and convey, when the public necessities require it. 6 Cranch., 145; 20 Johns., 103; 4 N. Y., 419; 6 *Ga.*, 131.

"The time when the compensation must be made may depend upon the peculiar constitutional provisions of the state. In some of the states, by express constitutional direction, compensation must be made before the property is taken. It is true, private property may be entered upon and temporarily occupied for the purpose of a survey and other incipient proceedings with a view to determining whether the public needs require the appropriation or not, and if so, what the proper location shall be; when, however, the land has been viewed, and it is determined to appropriate it, the question of compensation is to be considered."

When private property is sought to be appropriated by a private corporation, acting under the authority of the state, it is certainly proper, and it has sometimes been questioned, whether it was not absolutely essential, even in the absence of constitutional provision, that payment be actually made before the owner could be divested of his freehold. 11 Wend., 149; 13 Gray, 31. Chancellor Kent has expressed the opinion that compensation and appropriation should be concurrent. He says: "The settled and fundamental doctrine is that government has no right to take private property for public uses without giving just compensation, and it seems to be necessarily implied that the indemnity should be, in cases which will admit of it, to be previously and equitably ascertained and be ready for reception concurrently in point of time with the actual exercise of the right of eminent domain." 2 Kent, 339, note.

Chambers *vs.* The Cincinnati and Georgia Railroad.

While this is not an inflexible rule, yet it is so just and reasonable that statutory provisions for taking private property very generally make payment precede or accompany the appropriation, and by several of the state constitutions this is expressly required. · The constitution of Florida provides that private property shall not be taken or applied to public use, unless just compensation be first made therefor. So, likewise, are found similar provisions in the constitutions of Colorado, of Georgia, Iowa, Kansas, Kentucky, Maryland, Minnesota, Mississippi, Missouri, Nevada, Ohio, Pennsylvania. The constitutions of Indiana and Oregon require compensation to be first made, except when the property is appropriated by the state. It would be an unwise and unjust rule to deprive the owner of his property, and turn him over to an action at law against a corporation which may or may not prove responsible and to a judgment of uncertain efficacy. The consequence would be, in some cases, the party might lose his estate without redress, in violation of the inflexible maxim upon which his right is based. The land should either be his or he should be paid for it; whenever, therefore, the public locates the public work and declares the appropriation, the owner becomes absolutely entitled to the compensation. In some of the states it is held: "If a street is legally established over the land of an individual, he is entitled to demand payment for his damages without waiting for the street to be opened." 38 Penn., 247; 41 *Ib.*, 463; 2 Met., 559; 22 Pick., 268; 13 Iowa, 66; 18 Ill., 276; *Ib.*, 364; 3 Allen, 558; 4 N. H., 517. And if a railway line is located across his land and damages are appraised, his right to payment is complete before exclusive entry and occupancy. · In the case of *Young vs. McKenzie et al.*, 3 *Ga.*, 45, Judge Warner says: "We do not intend to say that the company could not have entered on the land and made the necessary survey and examination of the premises under the authority of the legislature, but we do intend to say the company had no

authority to appropriate the private property of the defendants for the permanent and exclusive use of the company until just compensation has been first made therefor in the manner pointed out by the charter. See also 3 *Ga.*, 333. In the case of the *Mayor and Council of the city of Rome vs. Perkins*, 30 *Ga.*, 154, this court held : " The owner of land is entitled to just compensation before it can be taken for public use." In that case the court hold impliedly that the landholder could have enjoined the corporation from taking his property until compensation was made, or he might recover by suit in trespass its value.

The remedy by injunction to restrain one who seeks to enter upon and build upon the right of way before compensation paid is also recognized by this court in the case of *Gammage vs. The Georgia Southern Railroad*, 65 *Ga.*, 614. But we need look no further in support of this complainant's right to this injunction against the respondents than to our own constitutional provision contained in article 1, section 3, paragraph 1. " Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."

The framers of this instrument, taught by the sad experience of many whose property had been taken for public purposes and who in vain have sought redress in the courts owing to the insolvency of the companies, threw this shield around every property-holder, that no one should take or appropriate his property for public use until just and adequate compensation should be first paid. All that the legislature can do is to oblige the owner to alienate his possessions for a reasonable price for public use, but then the constitution interposes its protective shield, and affixes the condition that the owner receives first "just and adequate compensation." We can see no other construction to give to this clear and plain requirement of the fundamental law. We have neither the authority nor desire to emasculate its clear and intelligent meaning by a construction which would be hostile to its justice and inconsistent

with its terms. We have nothing to do with the inconvenience or embarrassments such a construction may entail. It is one of the great bulwarks created for security to property against legislative action deeply imbedded in this bill of rights, which the aggrandizing spirit of the age is so prone to invade.

If the respondent below seeks an appeal to the courts against what he deems to be an unjust and excessive assessment by the appraisers, let him abide until the result is known, pay first the just and adequate compensation finally awarded, and then no constitutional barrier will stand against his entry and occupancy on the lands for the purposes for which it was condemned.

The facts as set forth in the bill of complainant and only partially evaded, and denied by the answer of the respondent show the wisdom and justice of this constitutional provision. The affidavits submitted by complainant show the assessment of damages by the appraisers to be less than he was entitled to in their opinion, by several hundred dollars in amount, while no countervailing testimony is offered by respondent to reduce them outside of the answer.

Here is the home of a man venerable in age, upon which he has resided with his family for thirty-eight years, planted by the side of the limpid stream whose waters he utilizes as they flow. He has gathered around him by industry and toil the fruits and flowers of the season, the comforts and conveniences of a well arranged and much loved homestead. Around it cluster the memories of a lifetime, treasured in common with those who have grown under his care from infancy to manhood and womanhood, under its broad and protecting shadows. In it he was gently descending to old age, loving that quiet and seclusion to which the heart of the old so strongly clings. But the spirit of the age demands this homestead for its iron track upon which its iron steeds may travel to meet the alleged necessities of trade and travel, or to extend their cor-

porate power and dominion. If the beauty of this home-stead is to be invaded and marred, its comforts to be imperiled, and its sweet, quiet seclusion to be broken upon with ringing bells, shrieking whistles and thundering trains, then let the corporation, in the language of the constitution, "first pay just and adequate compensation to the owners thereof."

Judgment reversed.