## BLANCHARD v. CITY OF KANSAS.

*(Circuit Court, W. D. Missouri, W. D.    May Term, 1883.)*

CONSTITUTIONAL LAW—COMPENSATION FOR PROPERTY TAKEN FOR PUBLIC USE—
CONSTITUTION OF MISSOURI OF 1875.

   By the constitution of Missouri, adopted in 1875, it was evidently intended
   that before property could be taken for public use the amount of compensa-
   tion to be made to the owner should be ascertained and paid, and when this
   has not been done the owner may recover its value in any proper form of ac-
   tion.

At Law.

Before MILLER, McCRARY, and KREKEL, JJ.

MILLER, Justice.  In the matter of Blanchard against the City of Kan-
sas, in which a demurrer was filed recently, we are called upon with-
out the aid of any of the state courts, certainly without the aid of the
supreme court of Missouri, to construe a clause of the constitution
of the state of very considerable importance to cities generally, and
especially to this city of irregular surface, where such awful grades
are encountered and so much change in the natural surface has to
be made, and in which the authorities have shown very commendable
diligence in complying with those demands.

The view that we have taken of the case departs somewhat from
the course of argument on the subject.  I am of opinion that the
constitution of Missouri of 1875 makes a much wider departure from
the constitution of 1865 on this subject than counsel have suggested
on either side.  The clause which provides, or the principle which
provides, that property shall not be taken for public use without just
compensation is one which existed at the common law.  It has been
considered one of the laws originating in natural rights,—a *jus gen-
tium*,—and has been embodied in the constitution of the United States,
and probably in some form in the constitution of every state in the
Union.  It has in the states of the Union assumed various forms of
expression, and in regard to the particular form of expression the
states differ a good deal,—that is, there are many of them that have
a marked difference in this: That while the ordinary form and the
form that is found in the constitution of the United States is a dec-
laration that private property shall not be taken for public use with-
out just compensation, there are many of the states which add,
"without compensation first paid or secured."  The constitution of
Missouri of 1865 adopted the more general form of expression, and
did not require compensation to be first paid or secured.  And I pre-

sume a majority of the constitutions of the states, and of the United States I know, do not require the compensation to be paid before the property is taken.

One reason for that is that it is the exercise of the power, as it is called, of eminent domain, which can only be exercised by the authority of the government itself, state or national. And as it is supposed that each government which exercises that authority is responsible and will always pay the just damages, or when it confers it upon any other corporation, as upon a city, that the city is responsible and will always pay the just damages, it was not thought advisable, in a great many of these constitutions, to insert any provision about previous payment. But after a while, when this power was conferred on railroad companies and other corporations to exercise the power of eminent domain, it became the policy of some of the states that the money should be paid in advance or secured.

I have not found copies of all the constitutions here. In fact, in the time I have had to look up the subject, I have not found a copy of any constitution, except the last constitution of Missouri, which makes that provision. But I know very well from my reading that there are many constitutions which require that the money should be paid or secured in advance. With these remarks I will proceed to compare the two constitutions of Missouri—the one of 1865 and the one of 1875.

The provision in the earlier constitution of Missouri is one taken from the old-fashioned bill of rights, I think, probably, of Massachusetts. The language is "that no property ought to be taken or applied to public use without just compensation;" and there it ended, leaving the legislature to make proper provisions on the subject.

Now, it seems that when the constitutional convention of 1875 came to that subject, they made material changes—two material changes, which are equally obvious, and both of which are important. And one of these was that they provided that the compensation should be first paid, and I take it that was the most important change in the provision in the new constitution. If we leave out the word "damage," and read it, you will see that "private property shall not be taken for public use without just compensation." That is about the same as the old one.

"Such compensation shall be ascertained by a jury or board of commissioners of three freeholders, in such manner as shall be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be distributed, or the

proprietary rights of the owner therein divested." Leaving out the word "damage," then, it is perfectly obvious that the main purpose of that law was that when private property should be taken for public use the money should be first paid, which was not the constitutional provision before. It provided a means by which it might be ascertained; and that ascertainment was by a jury, or board of commissioners, of not less than three freeholders, "in such manner as may be prescribed by law." Whether those words "may be prescribed by law" mean some future law to be enacted upon the subject, or refer to some law already in existence, it is simply a declaration that it shall be ascertained by a board of commissioners, or by a jury, according to law.

I do not enter into the question of whether further legislation is necessary on this subject to provide means of ascertaining these damages, because in the present case neither party has appealed to any such law, or acted upon any such grounds. I take it that the provision in the constitution for compensation, and the mode of ascertaining it, does not—as counsel seem to imagine—refer simply to the compensation for injury to the property damaged, and the mode of ascertaining it, but it applies equally under this constitution to the value of the property taken and to the injuries inflicted on the property damaged.

In both cases compensation should be first made, and it must be ascertained by the mode pointed out in this constitution. In the case before us the property is injured; the property is taken, if you use that phrase; the damages were not ascertained; the damages were not paid into court; the damages were not paid to the party; no agreement was made with the party; but the city went on, as I understand the complaint, to do the work and inflict the damage, and has never taken any steps under any law, natural or divine, constitutional or unconstitutional, to make compensation. It results, then, that since the positive declaration of the constitution is that private property shall not be taken or damaged for public use without just compensation, that it is bound in some way to make that just compensation, and that the law shall compel it to do it.

And we are all of opinion that the second clause in that constitutional provision,—there being three in that section,—that the second clause relates to the ascertainment of damages in order that it may be paid in advance. It imposes no rule of measuring the damages when it is not paid at all, and when the damages are inflicted and no proceedings are instituted to ascertain them. It follows from our

view, however, since neither party availed themselves of that provision or sought to put it in force or did put it in force, and the city exercised the right which the constitution and the law gave it, to cut down the streets and injure that property, it is responsible, and the other party has also the right that the law gave her to recover those damages in any proper form of action.

The result is that the demurrer in this case is overruled.

McCRARY and KREKEL, JJ., concur.