## McELROY *v.* KANSAS CITY.

*(Circuit Court, W. D. Missouri, W. D.* August, 1884.)

1. **CONSTITUTIONAL LAW—MISSOURI CONST.—BILL OF RIGHTS, § 21—PROPERTY TAKEN OR DAMAGED—PUBLIC USE—COMPENSATION.**

   The damage to property, by the constitution of Missouri, is placed upon the same basis as the value of the property taken, and neither can be done without compensation first made. This constitutional guaranty needs no legislative support, and is beyond legislative control.

2. **SAME—CHANGE OF GRADE OF STREET—DAMAGE.**

   When property is damaged by establishing the grade of a street, or by lowering or raising the grade of a street previously established, it is damaged for public use, within the meaning of the constitution.

3. **SAME—INCORPORATION OF CITY BY SPECIAL CHARTER BEFORE ADOPTION OF CONSTITUTION.**

   That a city was incorporated under a special charter before the adoption of the constitution of 1875, and its charter continued in force, will not render the constitutional provision in respect to damages to property inoperative within the territorial limits of such city.

4. **SAME—ENJOINING MUNICIPAL CORPORATION—MATTERS CONSIDERED.**

   A chancellor, in determining an application for an injunction, must regard not only the rights of complainant which are sought to be protected, but the injuries which may result from the granting of the injunction; and in applying this rule in a case where it is sought to enjoin a municipal corporation against which an action for damages would lie, from changing the grade of a street, the court should consider (1) the amount of injury to the complainant; (2) the solvency of the defendant, and (3) the character and importance of the public improvement.

5. **SAME—CONDITION PRECEDENT TO RIGHT TO PERFORM ACT ENJOINED—ABILITY OF DEFENDANT TO PERFORM CONDITION.**

   Where the defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, injunction will usually be granted until the condition is complied with.

6. **SAME—INABILITY OF DEFENDANT TO PERFORM CONDITIONS—FORM OF ORDER.**

   Where the defendant has an ultimate right to do the act sought to be enjoined, upon certain conditions, and the means of complying with such conditions are not at its command, the court will endeavor to adjust its order so on the one hand as to give to the complainant the substantial benefit of such conditions, while not restraining defendant from the exercise of its ultimate rights.

On Application for Injunction.

*Bryant & Holmes, James Scammon,* and *Botsford & Williams,* for plaintiff.

*Karnes & Ess, Jeff Brumback,* and *Wash. Adams,* for defendant.

BREWER, J. The complainant in this case seeks an injunction to restrain the grading of a street in front of his lot. He is the owner of a lot on the south-east corner of Sixth street and Tracy avenue, having a frontage on Tracy avenue of 41½ feet and on Sixth street of 110 feet. The grade on Tracy avenue has been established, and the avenue graded in front of complainant's property. This grade was 220 feet at the corner of Tracy avenue and Sixth street above the city directrix, or base line from which the elevations of the streets in said city are determined. On February 25, 1884, the defendant, by an ordinance entitled "An ordinance to grade a part of Sixth street

and establish a grade thereon," established the grade at the intersection of Tracy avenue and Sixth street at 211 feet above said city directrix, and 14 feet below the established grade of Tracy avenue at the same place, and ordered that said Sixth street be graded upon such grade. The effect of such ordinance, if carried into execution, would be to leave the lot of complainant many feet above Sixth street, and seriously to damage the value of the property. This, in a general way, is all that needs to be stated in order to present the preliminary questions raised by counsel upon this application for an injunction. While the interests involved in this case may not be large, yet the questions are of vast importance, and have received, as they deserve, the most serious consideration.

*First.* The constitution of Missouri, adopted in 1875, in section 21 of its bill of rights, provides "that private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners, of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, the property shall not be disturbed, nor the proprietary rights of the owner therein be divested."

It is beyond question that the grading of Sixth street will cause some damage to the complainant's property. It is conceded that no arrangement has been made between the defendant and him, or any other person, for the payment of damages, and it is also conceded that the legislature of Missouri has made no provision for the assessment of such damages. It will be perceived that no property of the complainant has been taken in the sense in which this phrase is generally used in the law, and his claim rests upon the proposition that his property will be damaged, and he insists that before it can be so damaged by the grading of the street, the injury to this property must first be ascertained and paid to him. It is a familiar rule, enforced by constitutional provisions in most of the states, if not also resting upon an antecedent basis of absolute right, that private property cannot be taken for public use without compensation. It is generally established that such compensation shall be ascertained and paid before the property is taken, and the universal rule of decision, at least where such constitutional provisions exist, has been to restrain the taking of private property until after the ascertainment and payment of the compensation. It is also a familiar rule that where no such constitutional provisions as the one in question exist, if no property be in fact taken, the incidental damages which may result to adjoining property gives no right of action to the sufferers, and furnishes no basis for interference by the courts or otherwise. But the contention is that this constitutional provision places the damage to property on the same basis as the taking of property, and that before property can be either taken or damaged, compensation must first be received; that the joining of the two words "taken" and "damaged"

subjects them to the same rules; and the argument is that as heretofore the taking has always been enjoined until the compensation is paid, now the damage will in like manner be restrained until compensation therefor is paid. As heretofore stated, the legislature has by statute provided means for ascertaining the value of property taken, but none for ascertaining the injury done to property damaged but not taken. Nevertheless, complainant insists that this provision of the constitution is imperative; that it does not depend for its force upon the legislature; that it cannot be defeated by the want of action on the part of the legislature; and that the courts are bound absolutely to enforce its mandates, and restrain any public action which either takes or damages private property until the value of the property taken, or the amount of damage done to property not taken, has been ascertained and paid. It is obvious that this question is of momentous importance, for as no provision has been made for ascertaining the damages to property not taken, the only way that this can now be ascertained is by personal agreement, which, if the claim of complainant is wholly sustained, would place every public improvement at the mercy of any party whose property is injured thereby.

This constitution was adopted in 1875; there have been many sessions of the legislature since; no action has been taken. There is no power to compel action by the legislature; it may leave the matter unattended to indefinitely in the future; and the question is, can the imperative mandates of the constitution be practically defeated by the want of action on the part of the legislature? I am not insensible of the importance of this question, or of the consequences which may hinge upon its decision; but I think that the duty of the court is plain. The constitution is the final law, measuring all private and public rights, whose commands, legislatures and courts must respect; whose mandates, when imperative, must be enforced, regardless of all consequences. As the established rule of construction has been, under constitutions prohibiting the taking of private property for public use until compensation was first made, to enforce that mandate irrespective of all legislative action, the same rule must obtain in this case. The damage to property is placed upon the same basis as the value of property taken, and neither can be done without compensation first made. In other words, uniting "property damaged" with "property taken" in the same clause and subject to the same prohibitions, places them in the same category as to judicial action. I see no logical escape from this conclusion.

When the constitutional convention met, the rule of protection against the taking of private property had long been settled, and must have been familiar. It did not attempt to prescribe two rules. It did not even make two enactments, but simply added "property damaged" to "property taken;" and for the courts to now hold that under the same language two rules were prescribed, is to create a distinction which has no just foundation, and would be mere judicial legis-

lation. I know that there are many provisions of the constitution which are not self-executing,—which are, so to speak, dormant until the legislature acts; as where rights are given, to be exercised in a way provided by the legislature. I think, too, in these days of enormous property aggregation, where the power of eminent domain is pressed to such an extent, and when the urgency of so-called public improvements rests as a constant menace upon the sacredness of private property, no duty is more imperative than that of the strict enforcement of these constitutional provisions intended to protect every man in the possession of his own. I hold, therefore, that the rule of the constitution is the same in respect to property damaged as to property taken, and that such constitutional guaranty needs no legislative support, and is beyond legislative destruction.

See, in support of these views, the following authorities: *Johnson* v. *Parkersburg,* 16 W. Va. 402–422; *Blanchard* v. *City of Kansas,* 16 FED. REP. 444; *Chambers* v. *Cincinnati R. Co.* 69 Ga. 320; *Thompson* v. *Grand Gulf R. R.* 3 How. (Miss.) 240; *Oakley* v. *Williamsburgh,* 6 Paige, 262; *Gottschalk* v. *C., B. & Q. Ry.* 14 Neb. 550; S. C. 16 N. W. Rep. 475; *Mallandin* v. *U. P. Ry.* 14 FED. REP. 394.

*Secondly.* It is insisted by the defendant that the words "damaged for public use" do not reach to the injury in question. It is unnecessary to enter into a discussion of this question, for it has been settled both in this court and in the supreme court of the state, (*Blanchard* v. *City of Kansas,* 16 FED. REP. 444; *Werth* v. *City of Springfield,* 78 Mo. 107,) in which latter case the court, after referring to this constitutional section, uses this language:

"When property is damaged by establishing the grade of a street, or by raising or lowering the grade of a street previously established, it is damaged for public use within the meaning of the constitution."

*Thirdly.* It is insisted that as the defendant was incorporated under a special charter before the adoption of the constitution of 1875, under section 53, art. 4, and section 7, art. 9, of such constitution, that charter was continued in force, and is the controlling law as to the defendant, and that this constitutional provision, in respect to damages to property, is not operative within the territorial limits of the defendant. As the immunity from liability for the damage to private property injured, but not taken, was not given by, and did not exist through, any provisions of this charter, but by virtue of a general rule in force everywhere, I do not see how the continuance of the charter, even if it be continued in full force, as claimed, continues this immunity. Whatever rights or immunities are derived from a charter may be preserved so long as that charter continues in force; but the continuance of a charter cannot preserve rights or immunities which do not flow from it. The rule of immunity is one depending upon general law, and when that general law was changed, the rule was changed, and changed wherever that general law was operative. But it may well be questioned whether, if this was a special immu-

nity given by the terms of the charter, it would continue in force after the adoption of the constitution, since in section 1 of the schedule it is declared that "the provisions of all laws which are inconsistent with this constitution shall cease upon its adoption."

*Fourthly.* It is urged that equity will not interfere when there is a plain and adequate remedy at law; that if complainant's property is damaged by the grading of this street he will have an action at law against the city for such damages; and that such action is a plain and adequate remedy. As against this, complainant says that this is a constitutional right; that damages at the end of a long and wearisome litigation is no adequate recompense; and that an individual contesting in an action with the public is at such a disadvantage that equity will not remit him to such action, but interfere in advance to enforce protection. Various authorities are cited on both sides upon these several questions; authorities which, while I have examined, I deem it unnecessary to notice and discuss, preferring to lay down some general propositions which control in the decision that I have reached.

*First.* A chancellor, in determining an application for an injunction, must regard not only the rights of the complainant which are sought to be protected, but the injuries which may result to the defendant or to others from the granting of the injunction. If the complainant's rights are of a trifling character, if the injury which he would sustain from the act sought to be enjoined can be fully and easily compensated, while, on the other hand, the defendant would suffer great damage, and especially if the public would suffer a large inconvenience if the contemplated act was restrained, the lesser right must yield to the larger benefit; the injunction should be refused, and the complainant remitted to his action for damages. This rule has been enforced in a multitude of cases, and under a variety of circumstances, and is one of such evident justice as needs no citation of authorities for its support.

*Second.* When the defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, injunction will almost universally be granted until the condition is complied with. This principle lies at the foundation of the multitude of cases which have restrained the taking of property until after the payment of compensation, for in all those cases the legislature has placed at the command of the defendant means for ascertaining the value of the property. In those cases the courts have seldom stopped to inquire whether the value of the property sought to be taken was little or great, whether the injury to the complainant was large or small, but have contented themselves with holding that as the defendant had full means for ascertaining such compensation, it was his first duty to use such means, determine and pay the compensation, and until he did so the taking of the property would be enjoined.

*Third.* Where the defendant has an ultimate right to do the act sought to be enjoined upon certain conditions, and the means of complying with such conditions are not at his command, the courts will endeavor to adjust their orders so on the one·hand as to give to the complainant the substantial benefit of such conditions, while not restraining the defendant from the exercise of its ultimate rights. Thus, in the case at bar, the defendant has of course the ultimate right to grade this street. As a condition of such right is a payment of damages, but it has no means of ascertaining those damages; no tribunal has been created, no provision of law made, for their ascertainment. Hence, if possible, the court should provide for securing to the defendant this ultimate right, and at the same time give to the complainant the substantial benefit of the prior conditions.

*Fourth.* In applying the rule first stated to a case like the one at bar the court should have principal regard to three matters:

(1) The amount of injury to the complainant. It is obvious that a grade of a single foot in front of a city lot would work but trifling injury, while on the other hand the grade might be such as practically to destroy the value of the adjacent property. In the one case it would seem a great hardship to tie up public improvement because of some trifling injury to the complainant, the amount of which injury was not attainable by any established means, and therefore that the party might justly be left to his action for damages; while in the other case the court might well insist that the value of complainant's property should not be wholly wrecked until such value has been paid to him.

(2) The court will consider the solvency of the defendant. If some irresponsible corporation should seek, in the exercise of the power of eminent domain, and under the guise of the contemplated public improvement, to do serious damage to property, the court should properly say that the owner was not bound to take the chance of collecting his damage from such a corporation, and imperatively require the prior adjustment and payment of such damages; while, if the party attempting the improvement was a corporation of established and permanent solvency, the court might say that the complainant would run little risk in pursuing simply his action for damages.

(3) If the improvement was one of great public importance, the court would justly regard that as a reason for not lightly interfering with the work, while if the improvement was more of a personal speculation and for private gain, the prior protection of the complainant would be most rigorously insisted on. Thus, if in the center of a large and thriving city like the defendant some improvement was contemplated which the necessities of business proclaimed to be urgent, the court on no slight consideration should interfere to delay or restrain it; while, on the other hand, if it was some matter in the outskirts of the city, having obviously principal reference to the private speculation of the individual, and of no earnest or urgent demand of

public good, the attention of the court would be properly directed to the full protection of the complainant's prior right. I think such considerations as these, and others of a similar nature, when properly regarded by the courts, will afford ample protection to individual rights, without unnecessary interference with needed public improvements; and that until the legislature makes suitable provision for the ascertaining of damages to property not taken, the courts should be guided by them in determining all applications of this nature for an injunction.

Now, looking at the facts of this particular case, it is evident that the injury to complainant's lot will be serious; that the solvency of the defendant is unquestionable, and that any judgment for damages against it can easily be collected; and also that the improvement is not one of pressing public necessity, but in the outskirts of the city, and having reference mainly to private benefit and individual speculation. I think, therefore, that the complainant is entitled to a restraining order, but at the same time it should not be absolute and unconditional.

The section of the constitution provides that this compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders. It is within the power of a court of chancery to provide a board of commissioners. The order, therefore, will be that upon the giving of a bond in the sum of $3,000, and the filing of a stipulation to accept such damages as shall be ascertained in the manner hereinafter provided in full satisfaction of all claims against the defendant, the defendant will be restrained from grading said street: provided, that at any time the defendant may, upon 20 days' notice, apply to either of the judges of this court for the appointment of a board of commissioners of three freeholders to ascertain and report the amount of damages which complainant will sustain by reason of the grading of said street, and upon the payment of the damages so reported by such commissioners the injunction will be vacated. The report of a majority of the commissioners will be the report of the board, and either party may appeal to the judge appointing such commissioners for a review of their report.

Before closing this opinion it is proper to notice one matter suggested by counsel for the defendant; that is, that if an application of this kind be entertained by the court, it will put a permanent stop to all public improvement, because one after another of the parties claiming to be damaged thereby will, from time to time, present his application for an injunction. But no such result will follow. *First.* Any party undertaking any public or *quasi* public improvement, must, before commencement, prepare for paying the value of all property taken, and all damages to property not taken. This, under the constitution of the state, is the condition of the appropriation of private property, and if any individual or corporation contemplates any appropriation of or injury to private property without placing itself in

the condition to make such previous payments, no cause of complaint can exist. Assuming that such provision has been made, and without it the sanctity of private property should never be invaded, then the courts will so control their orders as not materially to interfere with or postpone the contemplated improvement. If any parties claiming to have sustained damages do not immediately present their claim, and so have them all adjudicated in a single action, or at the same time, the court will very properly say to them that their delay is sufficient ground for not delaying the prosecution of the work, and will simply secure to them, by appropriate orders in the manner heretofore indicated, compensation for the damages they have sustained, and thus, without delay to the improvement, protection to the individuals will always be enforced. I think, therefore, the court can give free scope to any improvement, and at the same time fully protect the rights of the individual.

I see nothing else requiring notice.