## SEARLE V. CITY OF LEAD.

1. Under Const. Art. 6, Sec. 13, providing that private property shall not be taken for public use or damaged without just compensation, which shall be paid before possession is taken, a complaint alleging that plaintiff, as owner of certain lots, had erected a house and made improvements on the natural grade of the street, and that defendant city threatened to change the grade, thereby damaging her property, and that defendant had not compensated nor offered to compensate her therefor, is sufficient to support an injunction.

2. The allegation that defendant threatened to change the grade sufficiently imports that defendant threatened to disturb the street itself by physically grading it, and not merely to pass an ordinance changing the grade.

3. A mere denial by defendant that plaintiff would suffer any damage, without denying fully and specifically all the equities of the bill, did not justify the vacation of the injunction order.

4. Under Const. Art. 6, § 13, providing that, where private property is taken or damaged for public use, just compensation therefore must be paid before possession is taken, it was not necessary for plaintiff to allege that she would sustain irreparable injury, or that defendant was unable to respond in damages in order to entitle her to an injunction.

5. The provisions of Const. Art. 6, § 13, declaring that private property shall not be damaged for public use unless just compensation be first ascertained and paid, are not controlled by Laws 1890, Chap. 37, Art. 16, § 18, providing that, after the grade of any street has been established, the city shall, if they change the grade, be liable in damages, so as to defeat plaintiff's right to damages, where she had built upon and improved her lot at natural grade, and the city threatened to establish a new grade.

6. The fact that the city did not admit that its threatened acts would cause any damage to plaintiff did not relieve it of the obligation to take proper proceedings to ascertain the damages before commencing the proposed improvement, as required by Const. Art. 6, § 13, and Laws 1891, Chap. 94, in execution thereof.

7. On appeal from an order granting an injunction, the question whether the order was properly granted on the evidence will not be reviewed where the evidence is not brought up in the record.

(Opinion filed Nov. 20, 1897.)

Appeal from circuit court, Lawrence county. Hon. A. J. PLOWMAN, Judge.

Application to restrain the changing of a street grade. Preliminary injunction granted and defendant appeals. Affirmed.

The facts are stated in the opinion.

*H. E. Dewey*, for appellant.

*McLaughlin & McLaughlin*, for respondent.

CORSON, P. J. This is an appeal from an order granting a preliminary injunction. The plaintiff, claiming to be the owner of certain town lots in Lead city, fronting upon Mill street, in said city, upon which she had erected a house and made other improvements, instituted this action to restrain the city from changing the grade of said street, which she avers the city was threatening to do, and which change of grade, she avers, would cause damage to her property in a sum of, at least, $1,000, until such damages shall be ascertained and paid. The court made the order restraining the city from grading in front of her premises, but permitted it to complete a sidewalk then partially completed.

The errors assigned upon which the city relies for a reversal of the order are, in substance, as follows: (1) That the complaint does not state facts sufficient to constitute a cause of action for an injunction; (2) that the court erred in making said order after the defendant had presented its proposed answer, in which it denied that plaintiff was entitled to any compensation as in her complaint alleged, or that she would sustain any damage; (3) that the court erred in making the order, having dissolved the restraining order as to the construction of the sidewalk; (4) that the court erred, for the reason that the complaint shows upon its face that the only change of grade threatened was to bring the street to the established grade for the first time; (5) because the complaint contains no allegation that plaintiff would sustain irreparable injury, or that the defendant was not solvent, and fully able to pay any damages plaintiff might sustain by reason of such threatened change of grade.

The complaint states, in effect, that the defendant (appellant here) is a municipal corporation; that Mill street is one of the streets of the city; that plaintiff (respondent here) is the owner of certain lots (describing them) fronting upon said street; that she had erected a house and made other improvements upon said lots on the "natural grade" of said street; and that the defendant threatens to change the grade of said street by raising the same about 3½ feet, thereby leaving the house and other improvements of said plaintiff that depth below the grade, causing damage to her property fronting on said street of, at least, $1,000; and that said defendant has not compensated nor offered to compensate her for the damage so threatened. She therefore prays that said defendant be enjoined from in any manner changing the grade of said street until her damages have been ascertained and paid. The defendant filed an answer, which will be referred to further on in this opinion. A hearing was had, and the trial court made the order appealed from.

The theory, evidently, upon which the complaint was drawn, and upon which the court below granted the injunction, was that, under the provisions of the constitution of this state, it was the duty of the defendant to first proceed to ascertain the damage resulting to plaintiff's property by the change of grade or proposed change of grade, and pay or tender the same before the street could be lawfully graded. The section of the constitution relied on reads as follows: "Private property shall not be taken for public use or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained and before possession is taken." Const. Art. 6, Sec. 13. In this connection it may be proper to notice the act of the legislature of 1891, entitled "An act to provide for the assessment by jury of just compensation for private property taken for public use or damaged," approved March 7, 1891, and which constitutes Chapter 94, Laws 1891. The first section of this act reads as follows: "In all cases when municipal or other corporations, or individuals, invested with the privilege of taking private property for public use or damaging the same in making, constructing or repairing any work or improvement allowed by law, shall determine to exercise such privilege, it shall be the duty of such corporation or individual to file a petition in the circuit court of the county in which the property to be taken or damaged is situated praying that the just compensation to be made for such property, may be ascertained by a jury." The sections following provide specially the method of proceeding, impaneling a jury, etc. This act seems to have been adopted to provide a summary proceeding for carrying into effect the constitutional provision. It may be assumed from the statements in the complaint that Mill street is one of the streets of Lead city, over which the defendant has the right to exercise municipal control, by grading, keeping the same in repair, etc., and in which the public has the usual easements incident to highways in incorporated towns and cities. It may also be assumed from the statements

in the complaint that Mill street had not been previously graded or the grade established prior to the erection of plaintiff's buildings, and that the change of grade threatened was from the natural grade to the grade established by an ordinance of the city. It does not appear from the complaint whether the fee to the soil of Mill street is in the city or the owners of lots fronting thereon; but, in the view we take of the case, this is not material, as the authority of the municipality over the same and the rights of fronting owners are practically the same as to the liability of the one to pay and the right of the other to recover damages.

The question as to whether or not the facts stated in the complaint entitled the plaintiff to an injunction is an important one, and has not been heretofore passed upon by this court. It involves a construction of the constitutional provision, and the effect of including the term ''or damaged'' in our coustitution, and the duties and powers of municipal corporations thereunder. It is a general rule that compensation for private property, taken for public use, shall be ascertained and paid before the property is taken; and, in states where such provisions exist, it has been the rule to restrain the taking until after the ascertainment and payment of the compensation. McElroy v. Kansas City, 21 Fed. 257. It is also true as a general rule, that in states where no constitutional provision exists similar to the one in this state, and in which the term ''damaged'' is not included, if no property is in fact taken, the incidental damages which may result to the owner of abutting property give no right of action to the owner, and furnish no basis for interference by the courts or otherwise. We say as a general rule, for courts have held in a class of cases that where the injury was in some manner direct, and the estate actually invaded by superinduced additions of water, earth, sand, or other matter or artificial structures placed upon it, so as effectually to destroy or impair its usefulness, it is a ''taking,'' within the meaning of the constitution. Vanderlip v. City of Grand Rap-

ids (Mich.) 41 N. W. 677. The reports disclose many cases under the former system where streets were cut, down or filled to such a depth as to render the property of the abutting owner comparatively worthless. and yet such owner was without remedy. In other words, the private property of such owner was, in effect, taken for the use or benefit of the public, without any compensation made to the owner. Most of these decisions were based largely upon the decision of the supreme court of Massachusetts in Callender v. Marsh, 1 Pick. 417, which was a street grade case, in which a deep cut had been made. But in that case the learned chief justice who wrote the opinion fully recognized the injustice of the old rule as applied to the facts in that case. He says: "There are cases, without doubt, where the individual may suffer by the exercise of this power, and thus be made to contribute involuntarily much more than his proportion to the public convenience; but such cases seem not to be provided for, and must be left to that sense of justice which every com-munity is to be governed by. * * * Cases apparently hard will occur. The present is such a one."

But the framers of our organic law deemed it proper to fully protect the rights of the abutting property owner in the constitution itself and not leave him to the "sense of justice" by which a community is supposed to be governed. The framers of our organic law must be presumed to have been familiar with the provisions in the earlier state constitutions, and of the many cases in which private property had been, in effect, taken for public use, for which the property owner seemed to have no redress; and it is quite manifest that they inserted the term "or damaged" for the express purpose and object of protecting private property from the arbitrary exercise of municipal or other corporate power. The constitutional provision is unquestionably a wise and just one, and well cal-culated to protect property owners from injustice and wrong on the part of municipal or other corporations or individuals invested with the privilege of taking private property for pub-

lic use, and should be given a liberal construction by the courts in order to make it effectual in the protection of the rights of the citizen. The words "or damaged" were, without doubt, added to the usual provisions contained in earlier constitutions for the purpose of extending the remedy to incidental or consequential injuries to property, not actually taken for public use, in the ordinary acceptation of that term; and the same was adopted by the people with this express guaranty that just compensation should be made for property so taken or damaged for public use. And there is the further express guaranty that this compensation shall be paid before the proposed improvement can be made, or, in the language of the constitution, "possession is taken." The ascertainment and payment of damages that may be caused is a condition precedent to the right of the municipality to proceed. We are of the opinion, therefore, that, upon the facts stated in the complaint, the court below was authorized to make the order. · The words "or damaged" are found in the later constitutions of several of the states, among which are Illinois, Missouri, Nebraska, Pennsylvania, California and West Virginia; and the construction we have placed 'upon these words is fully sustained by the courts of these states. Werth v. City of Springfield, 78 Mo. 107; Reardon v. City and County of San Francisco (Cal.) 6 Pac. 325; Blanchard v. City of Kansas, 16 Fed. 444; Harmon v. City of Omaha, 17 Neb. 548, 23 N. W. 503; Johnson v. Parkersburg, 16 W. Va. 402; Chambers v. Railroad Co., 69 Ga. 320; McElroy v. Kansas City, 21 Fed. 257; Borough of New Brighton v. United Presbyterian Church, 96 Pa. St. 331; City of Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820. The supreme court of Missouri, in the first case above cited, says: "When property is damaged by establishing the grade of a street, or by raising or lowering the grade of a street previously established, it is a damage for public use, within the meaning of the constitution." In the case last above cited, the supreme court of the United States quotes from the supreme court of the state of Illinois in

Railroad Co. v. Ayres, 106 Ill. 518, the following: "It is needless to say that our decisions have not been harmonious on this question; but in the case of Rigney v. City of Chicago, 102 Ill. 64, there was a full review of the decisions of our courts, as well as the courts of Great Britian, under a statute containing a provision similar to the provision of our constitution. The conclusion there reached was that, under this constitutional provision, a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass or an actual physical invasion of the owner's real estate, but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party may recover. We regard that case as conclusive on this question." And then adds: "We concur in the interpretation. The use of the word 'damaged,' in the clause providing for compensation to owners of private property appropriated to public use, could have been with no other intention than that expressed by the state court. Such a change in the organic law of the state was not meaningless. But it would be meaningless if it should be adjudged that the constitution of 1870 gave no additional or greater security to private property sought to be appropriated to public use than was guarantied by the former constitution." In some respects our constitutional provisions differ from those of the states mentioned,— notably as to the ascertainment and payment of the compensation before possession is taken. Upon this subject see exhaustive opinion of Brewer, circuit judge, in McElroy v. Kansas City, 21 Fed. 257, *supra.*

The learned counsel for the defendant contends that the complaint does not allege that the defendant threatened to disturb the street itself; but we think the expression "change the grade" fairly imports that the defendant was threatening to physically grade the street, and not merely to pass an ordinance establishing the grade.

He also contends that, the defendant having denied that plaintiff would suffer any damage, the court should have vacated the injunction order. The rule invoked only applies to a case where all the equities of the bill are fully and specifically denied. Grant Co. v. Colonial & U. S. Mortg. Co., 3 S. D. 390, 53 N. W. 746. The answer in this case does not come within the rule. Without attempting to give the answer in full or even its substance, it is sufficient to state that it appears from the affirmative defense therein that the grade of the street had been established by Ordinance No. 75, and that the city engineer was proceeding with the work of constructing a sidewalk in front of plaintiff's lots on the grade so established. The mere denial, therefore, that plaintiff was entitled to any compensation or entitled to any damages was not sufficient to defeat the injunction.

The contention that the failure to allege in the complaint that the plaintiff would sustain irreparable injury, or that the defendant was unable to respond in damages, was fatal to plaintiff's right to an injunction, is not tenable, as applied to this class of cases. Plaintiff's right to an injunction does not depend upon the ability or inability of the defendant to respond in damages, but upon the fact that plaintiff is entitled to be paid such damages as she may sustain before the city can lawfully proceed to damage her property. In McElroy v. Kansas City, *supra.* the court says: ''When the defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, injunction will almost universally be granted until the condition is complied with. This principle lies at the foundation of the multitude of cases which have restrained the taking of property until after the payment of compensation, for in all those cases the legislature has placed at the command of the defendant means for ascertaining the value of the property. In those cases the courts have seldom stopped to inquire whether the value of the property sought to

be taken was little or great, whether the injury to the complainant was large or small, but have contended themselves with holding that, as the defendant had full means for ascertaining such compensation, it was his first duty to use such means, determine and pay the compensation, and, until he did so, the taking of the property would be enjoined." And in the same opinion the court says: "As the established rule of construction has been, under constitutions prohibiting the taking of private property for public use until compensation was first made, to enforce that mandate, irrespective of all legislative action, the same rule must obtain in this case. The damage to property is placed upon the same basis as the value of property taken, and neither can be done without compensation first made. In other words, uniting the 'property damaged' with 'property taken' in the same clause, and subject the same prohibitions, places them in the same category as to judicial action. I see no logical escape from the conclusion."

Appellant further contends that the complaint fails to show that any previous grade had been established; and, unless that fact appears, the respondent would have no right to damages for an incidental injury caused by the making of a grade for the first time, and cites Section 18, Art. 16, C. 37, Laws 1890, which provides that, after the grade of any street has been established, the city shall, if they change the grade, be liable for damages. But an act of the legislature, while entitled to great consideration, cannot abridge or control the provisions of the constitution. The provisions of the constitution are not limited to a change of grade once established, but are general, and include all damages to private property for public use. The legislature is not authorized to restrict the language or take from the citizen the protection the constitution has thrown around him and his property. This provision of the constitution is self-executing, and, if there was no law to carry it into effect, a court of equity would, in the exercise of its inherent power, provide some method for ascertaining the damages, if

any, caused by the injury threatened. But we think the act of 1891, heretofore referred to, provides fully the procedings which the city should have taken.

The contention that the city does not admit that its threatened acts would cause any damage to the respondent, and cannot avail itself of the provisions of the act, is without merit. The object of the provisions of the act is to ascertain whether or not there will be damage caused by the proposed improvement, and the amount, if any. The first section, as we have seen, provides that, "in all cases when municipal or other corporations * * * invested with the privilege of * * * damaging the same * * * shall determine to exercise such privilege, it shall," etc. It will be seen that the municipality is not required to state that its acts will, in fact, damage any one, but only that it has determined to exercise its privilege as such corporation, stating the necessary facts to call into exercise the power of the court. Whether or not the court below properly granted the order upon the evidence before it cannot be considered by this court, as the evidence is not brought in by the record. The order by the court below is affirmed.