This is an appeal from a judgment rendered sustaining appellee's general demurrer urged against appellant's petition. Following are the material allegations necessary to be considered in reviewing the act of the court in that respect, namely: Plaintiff alleged that he is now, and at the date of the injury complained of was, and for many years prior thereto had been, the owner of that parcel of land situated in the city of Dallas at the north intersection of Main and Peak streets fronting 125 feet on Main street and running back northwest along the north side of Peak street about 231 feet, on which plaintiff and his family lived as his home; that he planted shade trees on the sidewalk, built his residence on said lot, and occupied same with his family in 1901; that at that time the grade for both Peak and Main streets had been established by the city of Dallas on the ground in conformity with the natural formation of the surface thereof, which grade had been for many years recognized by said city and used by the public; that a short time after building his residence he inclosed it, built outhouses, built a substantial curbing and a substantial brick walk along that part of Peak street fronting his lot, and on that part of Main street fronting his residence, which he maintained in good repair at his own expense until it was damaged beyond repair by the city, in changing the grade of the streets complained of; that his sidewalks were in conformity with the grade of the street as it then existed, so that his lot could be entered by vehicles from any point of the street; but afterwards, to wit, in March, 1916, said city without the consent of plaintiff, and over his protest, began the work of changing the grade of said streets by cutting them down; that this work was continued intermittently until in May, 1919, when the city ceased all work in and about changing said grades. Plaintiff charged negligence, misfeasance, and malfeasance in the manner of making such change of grade, and that changing the grade at all was an abuse of the official discretion of said city; that only the driveway of said streets and the sidewalks on the opposite side of the street from plaintiff's property were cut down, leaving the sidewalks contiguous to plaintiff's residence at the original grades, so that plaintiff's property, as left by the city, was not accessible by vehicles from either street, and accessible by pedestrians only with difficulty; that plaintiff had no knowledge or notice that any change in the grades of Peak and Main streets were contemplated by defendant, until March, 1916, at which time the city began the work of changing the grade of said street, in accordance with a prearranged plan, of which plaintiff had no notice and of which there appears to be no record, which was continued intermittently until the paving of Main street was completed; that all of it, except the mere matter of paving Peak street and the paving of Main street, was done without the consent and over the protest of plaintiff; and that on April 28, 1916, the defendant city, acting through its board of commissioners, by an *Page 156 
order entered of record, approved and accepted said work and thereby became liable for the damage inflicted on plaintiff thereby. Plaintiff further alleged that both Main and Peak streets could and should have been paved on the original grade, and had that been done his property would not have been damaged and would have been left in the condition it was theretofore in, and would have been of the value in excess of $5,000 of its value in the condition in which it was left by such change of grades and the work done in effecting such change; that both Peaks and Main streets were paved at the costs and expense of abutting property owners and the street railway company, and the plaintiff paid in full his pro rata share of said amount, and therefore appellee was not entitled to offset against said damages any benefit or enhancement in value of his property which may have resulted from such paying. Plaintiff alleged several different items of damages to his property, aggregating $5,103, the items so alleged being the result of the work of the paving of said Main and Peak streets; that if the paying of said streets had been made without changing the grades of said streets, or if the paying of said streets with the change made in the grades thereof had been performed in a manner so as to have left plaintiff's property in as good condition as same was theretofore in as to the use and enjoyment thereof, before the paying of said streets and in the manner and way as alleged by plaintiff so as not to have damaged plaintiff's property by the partial destruction of same and leaving same in the imperfect state, as alleged, his property would not have been damaged.
Appellee's general demurrer to said amended original petition was sustained for the reason, as stated in the judgement rendered, that the existing charter of the city of Dallas contained the following provision, being article 14, § 11, viz:
"Before the City of Dallas shall be liable for damages of any kind, the person injured, or someone in his behalf, shall give the mayor or city secretary notice in writing of such injury within twenty days after the same has been received, stating specifically in said notice when, where and how the injury occurred and the extent thereof. The City of Dallas shall never be liable on account of any damage or injury to persons or property arising from or occasioned by any defect in any public street, highway or grounds, or public work of the city, unless the specific defect causing the damage or injury, shall have been actually known to the mayor, or city engineer, by personal inspection for a period of at least twenty four hours prior to the occurrence of the injury or damage, unless the attention of the mayor or city engineer shall have been called thereto by notice thereof in writing at least twenty four hours prior to the occurrence of the injury or damage, and proper diligence has not been used to rectify the defect, after actually known or called to the attention of the mayor or city engineer as; aforesaid."
The above was amended on April 11, 1921, and now reads as follows:
"Before the City of Dallas shall be liable for damages of any kind involving property damages or personal injuries or otherwise, the person injured or claiming such damages, or someone in his behalf, shall give the mayor or city secretary notice in writing, of such damage or injury within thirty days after the same has been received, stating specifically in such notice, when, where and how the exact injury or damages occurred and the full extent thereof.
"The City of Dallas shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect on any public street, highway or grounds, or of any public work of the city, unless the specific defect causing the damages or injury shall have been actually known to the mayor or city engineer, by personal inspection for a period of at least twenty four hours prior to the occurrence of the injury or damages; unless the attention of the mayor or city engineer shall have been called thereto by notice thereof in writing at least twenty four hours prior to the occurrence of the injury or damage; and proper diligence has not been used to rectify the defects after actually known to or called to the attention of the mayor or city engineer as aforesaid. That the notice herein required to be given to the mayor or city engineer of the specific defect causing the damage or injury shall apply, whether the defect arose from any omission or from the act of the city itself through its agent, servant or employee or otherwise."
The trial court, as stated in the judgment, sustained said demurrer because plaintiff's petition failed to show that any such notice or any notice of any character of damage claimed by him was given in the manner and form to the city before the institution of the suit as required by said article 14, § 11, of its charter, supra. This holding was clearly erroneous. The Constitution of the state of Texas, article 1, § 17, provides as follows: "No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person:"
This provision is mandatory and made the right of plaintiff to just compensation for damage to his property absolute and placed it beyond the power of the Legislature to impose conditions on such right of recovery or to otherwise qualify it. City of Waco v. Roberts et al. (Tex.Civ.App.)12 S.W.2d 263; Hickman v. Kansas, 120 Mo. 110, 25 S.W. 225,23 L.R.A. 658, 41 Am.St.Rep. 684; Searle v. Lead, 10 S.D. 312, 73 N.W. 101,39 L.R.A. 345; Webber v. Salt Lake City, 40 Utah, 221, 120 P. 503,37 L.R.A. (N.S.) 1115; Johnson *Page 157 
v. Parkersberg, 16 W. Va. 402, 37 Am.Rep. 779. However, appellee contends that said general demurrer was properly sustained, because: (a) Appellee alleged that Main and Peak streets were paved and improved at the costs of the abutting property owners; that he paid the benefits so assessed against him and his property, and failed to disclose that he availed himself of the opportunity to oppose the benefits assessed or proposed to be assessed against him; that he failed to state a cause of action because by alleging that he had been assessed for the benefits by reason of the improvements and paid same, the petition shows upon its face that he consented to the lowering of the street grade, which was part of the improvements within the language of article 1, § 17, of our state Constitution. (b) Appellant had an opportunity to contest the benefits and all other matters affecting his property, the regularity of the proceedings had before the city commission, and, if his protest was overruled, was required within ten days to file suit to contest the benefits for which assessment was made against him or the regularities of the proceedings before the city commission, and his failure to do so barred his rights to contest the proceedings on any ground.
If appellant's suit was based upon the costs of improvements assessed against his property, or the benefits determined by the city commission that would accrue to his property by the paving of said streets, or a contest of the proceedings leading up to and including the making of the order for the improvements of said streets by the paving of same, then appellee's position would have to be sustained. However, as we interpret the legal effect of appellant's petition, his cause of action is not bottomed upon the amount of the costs incident to the paving of said streets, assessed against his property as the just proportion of the costs of such improvement that should be borne by appellant as the owner of the lot involved; nor upon the benefits determined by the city commission that would accrue to appellant's property, but upon damages to his property, alleged to have been sustained by acts and conduct of appellee, independent of the assessment against appellant and his property of the pro rata costs of the improvement of said streets; and the value of the benefits to his property as assessed against him on account of said improvements.
As to the contention that by appellant alleging he had been assessed for the benefits to his property by reason of the improvement of said streets, and paid such assessment, the petition showed upon its face that he consented to the lowering of the street grades as a part of the improvement within the language of article 1, § 17, of our state Constitution, we cannot assent. This because, in our opinion, the allegations that appellant had no knowledge or notice that any change in the grade of Peak and Main streets was contemplated by appellee until March, 1916, at which time appellee began the work of changing the grade of said streets in accordance with a prearranged plan, of which there appears to be no record; that the grade of said streets had long theretofore been established in accordance with the natural lay of the surface of the land; that there was no necessity, in order to pave said streets, to make a change in said grade — not only explains the allegation on which this counter proposition is based, so as to make same harmonize with the general purport of appellant's cause of action, namely, one for damages to real estate within the meaning of article 1, § 17, of the Constitution, supra, but are diametrically in conflict with the deduction drawn by appellee therefrom as the grounds for this proposition. Therefore, we are of opinion that the only effect to be given said allegation is that appellant consented to the order made for the pavement of said streets, the amount of the costs thereof assessed against his property as being the value of the benefits that would accrue to same by said improvements, made in accordance with the existing conditions as to the grade of said streets.
We are therefore of opinion that the sustaining of said demurrer cannot be justified upon either one of the above grounds of the alleged invalidity of appellant's petition.
By appropriate propositions under cross-assignment of error, appellee contends that its plea in abatement should have been sustained, on the ground of misjoinder of causes of action, in that, appellant instituted his suit on the 18th day of February, 1918, claiming damages in the sum of $1,750, resulting to his property by reason of the paving of Peak street prior to March 16, 1916; that on October 21, 1927, appellant's third amended original petition was filed, claiming additional damages by reason of the improvement of Main street, ordered in June, 1918, and completed in May, 1919. Under the above state of the record, appellee contends that the damages claimed by appellant on account of the paving of Peak and Main streets constituted two separate causes of action, and therefore, regardless of the fact that they grew out of the same character of acts by and between the same parties, the evidence being of the same character and the relief sought being identical in each cause, its plea should have been sustained because it appeared that great confusion of issues would arise and injuries result to the detriment of appellee to permit said causes of action to be determined in the course of one judicial proceeding. To this proposition we cannot agree. Great latitude is allowed litigants under our judicial system to join separate causes of action growing out of or incident to the same or similar transactions between the same parties in one suit; this to avoid a multiplicity of lawsuits and to expedite the disposition of litigation *Page 158 
at minimum cost. That confusion of issues would result or additional burdens be engendered in the preparation for and the trial of two or more causes of action united as one suit can present no reason why said rule of practice should not be enforced. The court did not err in overruling said plea. Because of the error in sustaining appellee's demurrer, this cause is reversed and remanded for trial on its merits.
Reversed and remanded.