STORY, respondent, *v.* MACLAY, appellant.

EVIDENCE — *expert in freighting business.* A. brought this action against B. to recover an account for transporting merchandise by his ox train from Fort Peck to the old Crow Agency. Upon the trial, A. testified concerning the reasonable value of this transportation. The transcript does not show that A. had any knowledge of the freighting business, or the rates usually charged therein, or the topography of the country between Fort Peck and the Crow Agency, or any other fact that would qualify him to testify as an expert. *Held*, that A. was not a competent witness to give an opinion upon this question.

SAME — *competent witness to draw map.* Upon the trial, A. prepared a sketch of the country including Fort Peck, Fort Belknap and the Crow Agency and explained the same to the jury. The transcript does not show that the sketch was correct, or that A. had any knowledge of this region, and the sketch was not authenticated. *Held*, that the sketch was not competent evidence.

PRACTICE — *judgment for counter-claim.* The answer of B. set up a counter-

claim for $1,130, which was admitted by A. in his replication. The jury returned a verdict for $2,109. *Held*, that a judgment should have been entered for A. for the difference between these sums, or B. should have had a judgment for the amount of his counter-claim.

*Appeal from First District, Gallatin County.*

THE action was tried by a jury, BLAKE, J.

SANDERS & CULLEN, for appellant.

It was error to permit respondent to draw the map and present it to the jury. Respondent was not a competent witness to testify respecting the value of freight from Fort Peck to the old Crow Agency.

Appellants were entitled to a credit on the judgment for $1,130. They set this up as work done in full satisfaction of respondent's claim, yet if they fail to prove the last fact, they are not to be deprived of pay for the work. The pleadings do not deny the performance of this work, or its value. The verdict is for the full amount without any deduction.

It was error to refuse to give appellants pay for their services on their failure to prove that the services were to be paid for in a particular way.

E. W. & J. K. TOOLE, for respondent.

The only issue is whether the services rendered by appellants were done under the agreement set up in the answer, that appellants should transport the freight mentioned for respondent. The complaint sets up the value of the services and seeks to recover on account of them. Appellants, to defeat a recovery upon the implied contract sued on set up a special agreement, and do not set up any off-set or counter-claim, except such as is denied. It operated simply as a denial of respondent's allegations. The verdict and judgment for respondent established two things: 1. That respondent rendered the services at the special instance of appellants, and that they were reasonably worth the amount claimed. 2. That no such special agreement as that set up in the answer existed. *Murphy* v. *Napa County*, 20 Cal. 497.

There was no motion for a new trial, and this court will assume under the issues that no set-off existed, and that there was no evidence to support any such claim.

WADE, C. J.   This is an appeal from a judgment rendered on a verdict in favor of the respondent, and against the appellants on an account for hauling and transporting about 46,000 pounds of merchandise from Milk river to the old Crow Agency and Bozeman, Montana.

The complaint alleged that so transporting such freight was reasonably worth five cents per pound. On the trial the respondent was called as a witness and testified in his own behalf as follows:

"I have known defendants ten years. My ox train in the fall was at Bozeman, and in October or November, 1874, went to Fort Peck, on the Missouri river, about five hundred miles from here, to fill a contract of Babcock's. Nelson Sill was the wagon-master of the train in my employ." Whereupon the plaintiff's counsel asked witness: "State what it was reasonably worth in the fall and winter of 1874 to transport freight from Fort Peck to the old Crow Agency?" To which question the defendants then and there objected on the grounds of incompetency, which objection was overruled by the court, to which ruling the defendants then and there excepted and the witness answered as follows: "The value of freight at that time was in the neighborhood of from six to ten cents per pound. This was the worst season of the year. At the most favorable part of the year freight between those points was reasonably worth five cents per pound. To my best knowledge a train had never been over the road before." "And plaintiff's counsel then asked the witness to draw a map of the country, including Fort Peck, Fort Belknap and the Crow Agency, and explain the same to the jury (the said region covering an extent of country three or four hundred miles square) to which defendants then and there objected as being incompetent, and because it had not been shown that the witness was a draughtsman, surveyor or otherwise qualified and that the general and official maps of the Territory were alone competent, if any, which objection was overruled and the defendants excepted.

The witness performed and presented a sketch or plat of the region, and defendants objected to the same being presented to the jury or explained by witness, which objection was overruled and witness permitted to explain and show the same to the jury, to which decision of the court the defendants then and there excepted."

1. Was it competent for the witness to give his opinion as to what it was reasonably worth to transport the freight named, and was it competent for him to draw and exhibit to the jury a map of the country mentioned in his testimony?

In the absence of railroads the transportation of merchandise by wagon trains, into and from place to place in Montana becomes a specialty — a distinctive trade or business, having its mysteries and secrets which can only be learned and understood by practical experience and observation. What it costs to outfit a wagon train for freighting; the expense of maintaining such train by the day, week or month; and the amount of freight it can transport, are matters entirely unknown, saving only to those experienced in the trade or business or who have made the subject a matter of particular investigation. And in estimating what it is reasonably worth to transport merchandise from one place to another, it would be necessary to take into consideration the topography of the country between the two places, the condition of the roads, the mountains to pass, the streams to bridge or ford, the length of time required for the journey, the cost of the wagons, animals, harness, tools and accoutrements making up the train, the wear and tear of the same, the daily expense necessarily attending the train, the number of men necessary to employ, their wages and the cost of their support.

Such information, though not scientific or abstruse, would be necessary in order to enable a witness to give his opinion as to the reasonable value of transporting freight from one place to another by wagon trains. Nor is it necessary that a specialty to enable one of its practitioners to be examined as an expert should involve abstruse scientific conditions. 1 Whart. on Ev., § 444. Knowledge of a similar character to that which would authorize an expert to give his opinion as to the reasonable value of trans-

porting freight by railroad train would authorize a witness to give his opinion as to the reasonable value of transporting freight by a wagon train, and we do not see why it would not require an expert in either case, for in each case a witness would be compelled to call to his aid a special particular knowledge of the business, and in the absence of such knowledge his opinion would be wholly incompetent.

The record does not show that the witness was competent to give his opinion as an expert. There was no preliminary examination to ascertain whether he was qualified to express an opinion upon the subject of the inquiry. It does not appear that he had any knowledge whatever of the freighting business, or of the rates usually charged per pound for transporting merchandise. It was not shown that he knew any facts or had any knowledge that would qualify him to speak as an expert. His opinion was therefore incompetent testimony upon a material issue and its admission in evidence error.

2. Neither is there any thing in the record to show that the witness was in any way qualified to make a map of the country including Fort Peck, Fort Belknap and the Crow Agency, being a region of country between three and four hundred miles square. It does not appear that the witness had ever been over the country, or that he had any knowledge whatever in relation to it, or that his map was in any respect correct.

A map or plat in order to become competent evidence to go before a jury must be made by one having the requisite knowledge and properly authenticated. *Smith* v. *Strong*, 14 Pick. 133 ; *Gates* v. *Kieff et al.*, 7 Cal. 124 ; *Chirac* v. *Reinecker*, 2 Pet. (U. S.) 613 ; *Jackson* v. *Ten Eyck*, 5 Cow. 346 ; *Wilder* v. *The City of St. Paul*, 12 Minn. 192 ; *Bearce* v. *Jackson, Admr.*, 4 Mass. 408 ; 2 Phillips' Ev. 254 ; 1 Greenl. Ev. 161 ; 1 Whart. Ev., § 668.

The witness did not have knowledge sufficient to qualify him to make the map in question, and the same not being authenticated in any manner, was improperly exhibited to the jury and received in evidence.

3. The defendants in their answer set up a counter-claim amounting to $1,130.40, which the plaintiff in his replication

admitted. Being admitted in the pleadings this counter-claim formed no part of the issue submitted to the jury. The jury returned a verdict for the plaintiff for the sum of $2,109.98. Whereupon the defendants moved the court to deduct from the verdict the amount of their counter-claim and render judgment in favor of the plaintiff for the balance, but the court overruled the motion, and this action is assigned as error.

We can see no reason why the amount of the counter-claim, admitted by the plaintiff to be due and owing by him to the defendants, should not have been applied upon the verdict and a judgment rendered in favor of the plaintiff and against the defendants for the difference. Either this application should have been made or the defendants should have had a judgment against the plaintiff for the amount of their counter-claim.

We think the amount of the counter-claim should have been deducted from the verdict and a judgment rendered in favor of the plaintiff for the balance. If this were the only error in the case the judgment might be so modified as to correct it, but the matters discussed in subdivisions one and two render it necessary that a new trial be had.

The judgment is therefore reversed and the cause remanded for a new trial.

*Judgment reversed.*