# HELENA & LIVINGSTON SMELTING & REDUCTION COMPANY, Appellant, *v.* LYNCH et al., Respondents.

(No. 1,345.)

(Submitted May 17. 1901.   Decided July 22, 1901.)

*Mines and Mining—Ditches and Flumes—Right of Way—Condemnation Proceedings — Instructions — Damages — Verdict.*

| 25 | 497 |
|----|-----|
| 32 | 328 |

| 25 | 497 |
|----|-----|
| 36 | 223 |

| 25 | 497 |
|-----|-----|
| 138 | 368 |

1. Where, in a proceeding to condemn a right of way, plaintiff alleges title in defendant, a contention that the verdict for damages was not supported by the evidence, because there was no evidence that defendant's title was valid, cannot be considered.
2. In a proceeding to condemn a right of way, the verdict assessing the damages will not be set aside, the evidence being conflicting, and there being sufficient to support the verdict.
3. The fact that the jury found the land taken in condemnation proceedings of greater value than that fixed by the commissioners, and the incidental damages to be $1,100, whereas the commissioners adjudged there were none, does not indicate that the jury were influenced by passion and prejudice justifying interference with the verdict.
4. Under Code of Civil Procedure, Sec. 1080, Subd. 7, requiring a party desiring special instructions to reduce them to writing, and to request the court to so instruct, alleged errors in omitting to charge on certain points will not be considered in the absence of such a request.
5. In condemnation proceedings for a right of way over mining claims, it was not necessary for the court—at least in the absence of a specific request therefor—to define the word "prospect," as used in an instruction, since the term is well understood in all mining districts in the West.
6. In condemnation proceedings for a right of way for a ditch and flume over mining claims, an instruction, contrary to Civil Code, Secs. 1897-1899, that the right of defendant to the use of any water in the ditch was dependent on an agreement between the parties, was harmless error where there was no evidence to which the instructions could apply.

*Appeal from District Court, Jefferson County; M. H. Parker, Judge.*

Proceeding by the Helena & Livingston Smelting & Reduction Company against John Lynch and another to condemn a right of way for a ditch and flume. From the judgment assessing the damages, the plaintiff appeals. Affirmed.

*Messrs. Cullen, Day & Cullen,* for Appellant.

*Messrs. McHatton & Cotter,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the Court.

Proceeding to condemn a right of way for a ditch and flume over the Pine Tree and Katie Lynch lode claims, situate in Jefferson county. The extent of the area sought to be appropriated is a strip of land 4 feet in width and 1,421.6 feet in length upon the Pine Tree lode, and 777.5 feet in length upon the Katie Lynch lode. In the order of condemnation the district court appointed three commissioners to appraise the value of the land taken, and to assess the damages. After duly qualifying, the commissioners inspected the premises, heard the allegations and evidence of the parties, and thereupon reported in writing their findings, fixing the value of the way over both claims at $200, and declaring that there were no incidental damages. The defendants, being dissatisfied with the award, appealed to the district court, under the provisions of Section 2224 of the Code of Civil Procedure, and thereafter, upon a trial in the court, a verdict was returned in their favor, fixing the value of the way over the Katie Lynch lode at $100, with incidental damages of $300, and over the Pine Tree lode at $150, with incidental damages of $800. The jury further found that neither of the claims would be benefited by the ditch and flume. From the judgment entered upon the verdict, and from an order denying a new trial, plaintiff has appealed.

1.    Counsel for plaintiff have entered into an elaborate argument to demonstrate that the evidence is insufficient to justify a verdict for more than nominal damages. They insist, first, that there is no evidence that the title of defendants is founded upon valid locations under the laws of the United States. The title of the claims was not an issue in the case. In order to maintain this proceeding at all, it was incumbent upon the plaintiff to allege and show title in defendants. Acting upon this theory, and in order to give the district court jurisdiction to entertain its application, the plaintiff alleged in its complaint that defendants were the owners of the claims, and that

they had refused to come to an agreement with it by which it might acquire the proposed right of way by the payment of adequate compensation.    Defendants, admitting their ownership and that plaintiff was entitled to a right of way, contested the amount of damages only.    Therefore an inquiry into the validity of the title would have been wholly foreign to the issue before the court, and would have shed no light upon the question of value.    In the second place, counsel insist that the evidence fails to show that the claims have any value by reason of mineral deposits actually shown to exist therein sufficient in quantity and quality to warrant the expenditure of time and capital in their development.    It is true, the evidence discloses that the claims were, when this proceeding was begun, mere prospects, without sufficient development to have more than a speculative value; nevertheless, their condition was fully shown to the jury, and there was some evidence from which the jury were warranted in finding that they were of sufficient apparent value to justify further development.    The evidence further tended to show that the points at which this work could be done most cheaply and conveniently were at the points of discovery, and that the permanent location of the flume and ditch upon the claims would entail much additional cost and inconvenience in the prosecution of development work.    The only value a newly-located mining claim has is usually prospective.    No person can look beneath the surface and tell its worth; nor can he say from a superficial examination that it is or is not of value.    In determining what is its value, its situation and surroundings must be taken into account, and from these, in connection with what actually appears in the superficial openings or outcroppings of mineral-bearing rock upon the surface with the opinions of those experienced in mining, a conclusion must be reached. This was the theory of the defendants in the trial of this case, and, though there was a sharp conflict in the statements of fact and opinions of the various witnesses, we would not feel justified in saying that the jury were wrong in finding as they did. This statement is especially applicable to the amounts fixed by

the jury as incidental damages. There was a great deal of evidence upon the subject of the additional expense which the defendants would have to bear in order to protect the ditch and flume from injury during exploration. The owners of such claims are entitled to work them according to what, in their own judgment, and that of other experienced miners, is the cheapest and most approved plan, and thus to demonstrate whether or not a mine in fact exists therein. An interference with this plan by the appropriation of a right of way, or the imposition of any other servitude upon the claim, may or may not, according to circumstances, cast an additional burden of expense upon the owner, which may be considered by the jury in awarding damages. In this connection the jury found that the additional burden cast upon the defendants by the presence of the flume and ditch upon their property amounted to the sums fixed by them as incidental damages. While, under the evidence, the total amount might have been much smaller, or even nothing, yet it also might have been found to be much larger. That this Court has no power to interfere in such a case is too well settled to require a citation of authorities.

2. It is said by counsel that, though the conclusion may be justified, upon the whole of the evidence, that defendants are entitled to some compensation, the amount fixed by the jury is so grossly in excess of what was awarded as a fair amount by the commissioners, and shown by the evidence to be fair and just, that the jury must have been influenced by passion and prejudice. What we have already said disposes of this contention. While it is true that the jury found the value of the land taken greater than that fixed by the commissioners, and the incidental damages to be $1,100, whereas the commissioners found none, nevertheless the judgment of the commissioners was not the standard by which the jury were to be governed, but the evidence submitted at the trial. The fact that the latter found the land of a greater value than did the former, and that there were incidental damages, though the former judged that there were none, does not of itself indicate passion and preju-

dice, but may fairly be taken as an indication that the latter had before them facts for consideration which were not brought to the attention of the commissioners, or considered by them.

Courts are reluctant to interfere with the verdict of a jury, and will not do so, on the ground of excessive damages given under the influence of passion and prejudice, unless it is apparent that their feelings of passion and prejudice have entered into and influenced their decision. Where it is apparent that this is the case, a new trial should be granted, unless it is also apparent that the verdict is otherwise correct, and the ends of justice will be fully served by requiring the successful party to remit the excess. In the latter case, however, it should appear that upon the facts the successful party is clearly, and as a matter of law, entitled to a verdict in some amount, and that the prejudice and passion of the jury have gone no further than to lead them to swell the amount of damages; otherwise, all their deliberations must be deemed to have been permeated by their feelings, and the decision as a whole the result of passion, rather than of their calm, deliberate judgment. There is, as we have seen, evidence to support the findings of the jury of incidental damages in substantial, instead of merely nominal, sums, and under it these sums might have been greater. The findings may, therefore, fairly be said to be within the purview of the evidence, and not founded upon extrinsic considerations. Under these conditions we do not feel that we should adopt a different view from that entertained by the district court in overruling the motion for a new trial on the ground in question.

3. Counsel criticise the instructions submitted to the jury in several particulars,—among others, in that the court omitted to tell them that the value of the area taken for the way was dependent upon the actual value of the claims as mining claims, the evidence showing that they had no value for other purposes; in that it failed to submit to them the question whether the claims were of sufficient value to "warrant a prudent person in expending money thereon with a reasonable expectation of developing" valuable mines therein; and in that special instruc-

tions were not submitted on these points touching the Katie Lynch claim, and also upon the question whether the defendants expected to develop it.

The evidence was all directed toward an effort to show the value of the claims as mining claims, and not for any other purpose, and it was made apparent thereby that, if the claims had any value whatever, it was dependent upon the probability that upon development they would prove of value as mines. The court submitted instructions generally informing the jury how to proceed in order to find the amount of compensation to which the defendants might be entitled under the proof. Though they were not told in terms that, if the claims had no value as mining claims, the damages should be fixed at a nominal sum only, they could not possibly have been misled to adopt any standard of value other than the one plaintiff contends should have guided them. They were told distinctly that the "actual value of the property sought to be appropriated" should be the measure of compensation for all property taken, and this standard they were clearly told should be applied to each claim. Under the statute in this state applicable to civil cases (Code Civ. Proc. Sec. 1080, Subd. 9; Acts 1897, p. 241), the court is required to instruct the jury in all matters of law which it thinks necessary for their information in rendering a verdict. Under subdivision 7 of the same section, the party desiring special instructions upon any particular subject must reduce them to writing, and deliver them to the court with a request that they be given. Unless this be done, the losing party will not be heard to complain that the instructions are not sufficiently specific, provided the court has correctly stated the law applicable to the facts of the case. (Hayne, New Trial, 120; *State* v. *Broadbent,* 19 Mont. 467, 48 Pac. 775; *Territory* v. *Manton,* 8 Mont. 108, 19 Pac. 387; *Mulligan* v. *Montana Union Railway Co.,* 19 Mont. 135, 47 Pac. 795; 2 Thomp. Trials, 2341.) So far as the record advises us, the plaintiff did not request specific instructions in the particulars mentioned. It therefore cannot complain that the trial court did not more fully state the law.

It is said by counsel that the court erred in failing to inform the jury as to what is necessary to be done in order to make a valid location of mining claims, and also in failing to define for them the word "prospect," as used in one paragraph of the instructions. What has already been said as to the other criticisms applies with equal force to these. Furthermore, the validity of the locations under which defendants claim did not and does not arise in this case. What has been said in the first paragraph of this opinion disposes of this contention. It may also be said that it was not necessary for the court—at least in the absence of a specific request therefor—to define the word "prospect." This is a term the signification of which is well understood in all the mining districts of the West, and the trial court was justified in assuming that the jury understood it without specific definition.

In paragraph 9 of the instructions the court told the jury "that, under the law, defendants will not have the right to use the water flowing in the ditch or flume across the claims belonging to plaintiff without an agreement or understanding with plaintiff concerning the use of the same, and the evidence does not disclose that such agreement or arrangement can be made." It is said that this instruction is prejudicially erroneous, in that under the statute (Civil Code, Secs. 1897-1899) the defendants have the right to the use of any surplus water which the plaintiff may have in its ditch or flume, independently of any contract therefor, and' that under these provisions the plaintiff had the right to have submitted to the jury the question whether the construction of the ditch and flume upon the claims would prove of benefit to them, by furnishing a convenient source of water supply, of which defendants could avail themselves in prosecuting the work of development. The instruction is erroneous in saying that the right of defendants to the use of any water was dependent upon an agreement between them and plaintiff. Under the statute, *supra*, if the plaintiff should at any time have surplus water, and the defendants should desire to use it, they could avail themselves of it, even over the objec-

tion of plaintiff, by a compliance with the terms of the statute. There was no evidence before the court, however, to which the instruction could apply. It was not shown that the plaintiff at the time of the trial had, or ever would have, any surplus water available for defendants' use, by contract or otherwise. The jury, therefore, could not have found that the flume and ditch would, for the reason stated, be of any benefit to the defendants' property. For this reason the instruction should not have been given, but, under the evidence submitted, no harm could result from the exclusion of the whole matter from the consideration of the jury, which, in effect, the instruction complained of does.

The judgment and order appealed from are affirmed.

*Affirmed.*